UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MARILYN D. SMITH,                    )
                                     )  No. CV-04-332-MWL
          Plaintiff,                 )
                                     )  ORDER GRANTING DEFENDANT'S
     v.                              )  MOTION FOR SUMMARY JUDGMENT
                                     )
JO ANNE B. BARNHART,                 )
Commissioner of Social               )
Security,                            )
                                     )
          Defendant.                 )
_____    )

     BEFORE THE COURT are cross-Motions for Summary Judgment,

noted for hearing without oral argument on April 11, 2005. (Ct.

Rec. 11,14.) Attorney Lora Lee Stover represents plaintiff;

Special Assistant United States Attorney Carol A. Hoch represents

the Commissioner.  The parties have consented to proceed before a

magistrate judge.  (Ct. Rec. 6.)  After reviewing the

administrative record and the briefs filed by the parties, the

court **GRANTS** defendant's Motion for Summary Judgment (Ct. Rec. 14)

and **DENIES** plaintiff's Motion for Summary Judgment. (Ct. Rec. 11.)

     Plaintiff currently receives Supplemental Security Income

benefits ("SSI") based on her November 16, 2001 application. (Tr.

7.) She challenges her first and unsuccessful December 30, 1999, application. (Tr. 69.) This application alleges disability beginning May 1, 1997, from fibromyalgia and ankylosing spondylosis. (Tr. 73.) Plaintiff's attorney later moved to amend the onset date to December 1, 1999. (Tr. 45.)

After her claim was denied, plaintiff timely filed a request for hearing. The Administrative Law Judge (hereinafter, "ALJ,") Richard Hines, held a hearing on May 8, 2001. (Tr. 24.) In his September 27, 2001, decision, the ALJ denied benefits. (Tr. 29.) The Appeals Council denied review.  The instant matter is before this court pursuant to 42 U.S.C. §405(g). The relevant period is from the amended onset date of December 1, 1999, through September 27, 2001, the date of the ALJ's decision.

## ADMINISTRATIVE DECISION

The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 25.) He found that Ms. Smith suffers from the severe impairments of ankylosing spondylitis and obesity. (Id.) The ALJ found that the severity of plaintiff's impairments did not meet or equal the requirements of the Listings. (Id.) He found that Ms. Smith has the residual functional capacity to perform sedentary work. (Tr. 28.) Relying on a vocational expert, the ALJ found that plaintiff could perform her past relevant work as a call monitor. (Tr. 29.) Because he found that she could perform her past relevant work, the ALJ found plaintiff not disabled.

## STANDARD OF REVIEW

The standard for review by this Court is set forth In *Edlund*

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
- 2

1 | *v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

2      A district court's order upholding the
3 Commissioner's denial of benefits is reviewed de novo.
*Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000).
4 The decision of the Commissioner may be reversed only if
it is not supported by substantial evidence or if it is
5 based on legal error. *Tackett v. Apfel*, 180 F.3d 1094,
1097 (9th Cir. 1999). Substantial evidence is defined as
6 being more than a mere scintilla, but less than a
preponderance. *Id.* at 1098. Put another way, substantial
7 evidence is such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion.
8 *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the
evidence is susceptible to more than one rational
9 interpretation, the court may not substitute its
judgment for that of the Commissioner. *Tackett*, 180 F.3d
10 at 1097; *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th
Cir. 1999).
11      The ALJ is responsible for determining credibility,
resolving conflicts in medical testimony, and resolving
12 ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th
Cir. 1995).  The ALJ's determinations of law are
13 reviewed *de novo*, although deference is owed to a
reasonable construction of the applicable statutes.
14 *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

**SEQUENTIAL PROCESS**

15      In the *Edlund* case, 253 F.3d at 1156-1157, the court set out
16
the requirements necessary to establish disability:
17
18      Under the Social Security Act, individuals who are
"under a disability" are eligible to receive benefits.
19 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as
"any medically determinable physical or mental
20 impairment" which prevents one from engaging "in any
substantial gainful activity" and is expected to result
21 in death or last "for a continuous period of not less
than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an
22 impairment must result from "anatomical, physiological,
or psychological abnormalities which are demonstrable by
23 medically acceptable clinical and laboratory diagnostic
techniques." 42 U.S.C. § 423(d)(3). The Act also
24 provides that a claimant will be eligible for benefits
only if his impairments "are of such severity that he is
25 not only unable to do his previous work but cannot,
considering his age, education and work experience,
26 engage in any other kind of substantial gainful work
which exists in the national economy...." 42 U.S.C. §
27 423(d)(2)(A). Thus, the definition of disability
consists of both medical and vocational components.

28
ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
- 3

> In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id.* (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

When an impairment is severe but does not meet or equal the requirements in the Listings of Impairments, the sequential evaluation process must be employed to identify an individual's functional limitations and restrictions and assess his or her remaining capacities for work related activities. **SSR 96-8p.**

### ISSUES

Whether there is substantial evidence to support the ALJ's decision to deny benefits and, if so, whether that decision was based on proper legal standards. The specific issues raised by the parties are whether the ALJ properly credited the medical opinions, weighed plaintiff's credibility, determined her residual functional capacity, and gave a complete hypothetical question to the vocational expert. (Ct. Rec. 12 at 9-11.)

### ADMINISTRATIVE HEARING

At the hearing, medical expert Arthur Craig, M.D., vocational expert Deborah LaPoint, and plaintiff testified. Ms. Smith was 41 years old at the time of the ALJ's decision. (Tr. 28.) She had completed high school and some college classes, including college classes taken during the relevant period. (Tr. 27-28.) Plaintiff has worked as a nurse's aid and as a call monitor. (Tr. 80.) Ms. LaPoint opined in response to the ALJ's hypothetical that a person with a residual functional capacity for sedentary work could do

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
- 4

1  plaintiff's past relevant work as a call monitor. (Tr. 475.)

2  **ANALYSIS**

3  1.  Weighing Medical Evidence

4      Plaintiff contends the ALJ erred when he ignored the opinions of

5  treating physician Paul Skrei, M.D., and consulting physician Arthur

6  Craig, M.D. (Ct. Rec. 12 at 9.) The Commissioner responds that

7  plaintiff mischaracterizes the ALJ's consideration of these medical

8  opinions because he did credit them. (Ct. Rec. 15 at 10-14.)

9      Dr. Skrei treated Ms. Smith during the relevant period beginning

10 in March of 1999. (Tr. 158.) On March 23, 1999, Plaintiff reported

11 breast pain on the right side. (Id.) Dr. Skrei's exam overall was

12 "pretty benign," and he opined that plaintiff's reported pain was

13 possibly related to anxiety. He prescribed vicodin. (Tr. 158-59.) She

14 returned in June reporting muscle pain and tightness. (Tr. 160.) Dr.

15 Skei noted plaintiff was obviously fatigued and somewhat depressed.

16 (Tr. 161.) She was tender in multiple points along her spine, legs and

17 arms. (Id.) He gave plaintiff a handout on fibromyalgia, continued her

18 paxil prescription, and prescribed naprosyn. Dr Skrei told plaintiff

19 to begin water aerobics and swimming. (Id.) Ms. Smith told Dr. Skrei

20 that her work was stressful, she hated her job, and she would be laid

21 off in three months. (Id.)

22     Six months later, plaintiff returned stating she needed a letter

23 for DSHS. (Tr. 163.) Dr. Skrei opined that plaintiff's test results

24 were consistent with ankylosing spondylitis. (Id.) Ms. Smith said she

25 quit her job because of pain. (Id.) Dr Skrei opined that plaintiff's

26 ankylosing spondylitis would improve and stabilize with proper

27 treatment, and she would be able to return to work as long as she

28

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

1  could frequently change positions. (Tr. 164-65.)

2      On March 13, 2001, plaintiff reported right upper quadrant pain.
3  (Tr. 347.) Dr. Skrei diagnosed obstipation. (Id.) In June of 2001, he
4  observed that plaintiff's anklyosing spondylitis was "doing well with
5  the combination of prednisone, sulfasalazine, arava and celebrex,
6  although her stress-related fibromyalgia seemed to be worsening." (Tr.
7  341.) Dr. Skrei presecribed oxycontin and again recommended exercise.
8  (Tr. 341-42.) He did not treat plaintiff again for ankylosing
9  spondylitis for four months, until October of 2001, when he opined
10  that plaintiff was not capable at that time of working in any
11  capacity. (Tr. 337.) As the Commissioner notes, plaintiff was found
12  disabled as November of 2001 based in part on Dr. Skrei's opinion in
13  October of 2001. (Ct. Rec. 15 at 12.) The Commissioner is correct that
14  Dr. Skrei's records do not support finding plaintiff disabled before
15  September 27, 2001.

16      In a disability proceeding, the treating physician's opinion is
17  to be given special weight because of his familiarity with his patient
18  and his patient's physical condition. See *Fair v. Bowen*, 885 F. 2d
19  597, 604-05 (9th Cir. 1989). If the treating physician's opinions are
20  not contradicted, they can be rejected only for clear and convincing
21  reasons. *Lester v. Chater*, 81 F. 3d 821, 830 (9th Cir. 1996). While a
22  treating physician's uncontradicted medical opinion will not receive
23  "controlling weight" unless it is "well-supported by medically
24  acceptable clinical and laboratory diagnostic techniques," Social
25  Security Ruling 96-2p, it can nonetheless be rejected only for "'clear
26  and convincing' reasons supported by substantial evidence in the
27  record." *Holohan v. Massanari*, 246 F. 3d 1195, 1202 (9th Cir.

28
ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
- 6 -

2001)(quoting, 157 F. 3d 715, 725 (9th Cir. 1998)). Furthermore, a treating physician's opinion "on the ultimate issue of disability" must itself be credited unless there are clear and convincing reasons to reject it. *Holohan,* 246 F. 3d at 1202-03. Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain, as specific, legitimate reasons for disregarding the treating physician's opinion. *See Flaten*, 44 F. 3d at 1463-64; *Fair,* 885 F. 2d at 604.

Plaintiff's contention that the ALJ ignored Dr. Skrei's opinion is not supported by either the ALJ's decision or the record. The ALJ specifically notes Dr. Skrei's opinion that plaintiff would be able to return to work after appropriate treatment, preferably at a job that would allow her to change positions. (Tr. 26.) With respect to Dr. Skrei's opinion on October 23, 2001, that plaintiff's condition had worsened, the ALJ could not have considered that opinion because his decision is dated September 27, 2001. (Tr. 29.) The Commissioner is correct that the ALJ properly credited Dr. Skrei's opinion for the applicable time frame of December 1, 1999 through September 27, 2001.

Plaintiff argues that the ALJ failed to properly credit the opinion of treating physician Jeffrey Butler, a rheumatologist. (Ct. Rec. 12 at 9.) The Commissioner responds that the ALJ credited Dr. Butler's opinions. (Ct. Rec. 15 at 12.)

During the relevant time frame, plaintiff first saw Dr. Butler on June 30, 1999. (Tr. 181.) She presented with findings consistent with fibromyalgia, with the possibility of an underlying inflammatory

condition. (Id.) By January 18, 2000, Dr. Butler diagnosed ankylosing
spondylitis after plaintiff "responded dramatically" to prednisone.
(Tr. 187.) He added celebrex to the prednisone. (Id.) In April of
2000, Dr. Butler notes plaintiff's obesity. (Tr. 190.) By July of
2000, plaintiff reported less morning stiffness but "overwhelming
fatigue." (Tr. 192.) Her husband reported she experienced sleep apnea.
(Id.) Dr. Butler suspected that plaintiff might suffer from sleep
apnea. (193.) He concluded that plaintiff's ankylosing spondylitis
seemed to be under adequate control. (Tr. 193.)

In September of 2000, Dr. Butler speculated that plaintiff's
diffuse musculoskeletal pain may be caused by sleep apnea. (Tr. 215.)
He referred her for a sleep study. On October 26, 2000, the results
revealed no sleep apnea. (Tr. 294.) On April 23, 2001, Dr. Butler
remarked that plaintiff's pains have "waxed and waned" since he had
last seen her. (Tr. 318.) She reported recently returning from a
wedding in Florida and advised that while there, she had "very little
pain." (Id.)

The ALJ accepted Dr. Butler's opinions, including his overall
finding that plaintiff's symptoms "waxed and waned" over time. (Tr.
27.)

Plaintiff contends that the ALJ failed to properly credit
consulting medical expert Dr. Craig's opinion that Plaintiff's
ankylosing spondylitis came close to meeting a Listed impairment but
was not enough to meet the Listings. (Ct. Rec. 112 at 9-10; Tr. 441-
42.) Plaintiff contends the ALJ should have taken that to mean that
a Listed impairment was met. The Commissioner responds that other
evidence in the record supports Dr. Craig's opinion that plaintiff's

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

1  impairments do not meet or equal the Listings and that she can perform
2  sedentary work. (Ct. Rec. 15 at 13-14.)

3       The opinion of a non-examining physician cannot by itself
4  constitute substantial evidence that justifies the rejection of the
5  opinion of either an examining or a treating physician. *Lester*, 81 F.
6  3d at 831 citing *Pitzer v. Sullivan*, 908 F. 2d 502, 506 n. 4 (9th Cir.
7  1990). Case law requires not only an opinion from the consulting
8  physician but also substantial evidence (more than a mere scintilla,
9  but less than a preponderance), independent of that opinion which
10 supports the rejection of contrary conclusions by examining or
11 treating physicians. *Andrews v. Shalala*, 53 F. 3d 1035, 1039 (9th Cir.
12 1995).

13      Consulting physician Dr. Craig's opinion does not conflict with
14 the opinions of her treating doctors. Nothing in the records of either
15 Dr. Skrei or Dr. Butler indicate that plaintiff was unable to perform
16 sedentary work during the relevant time frame; instead, their records
17 document improvement over time. The ALJ properly credited all three
18 of these doctors' opinions.

19             <u>2. Determining Plaintiff's Credibility</u>

20      Plaintiff alleges that the ALJ erred by finding her less than
21 completely credible. (Ct. Rec. 12 at 10.) The Commissioner answers
22 that the ALJ's finding is supported by the record, including
23 objective medical evidence and Ms. Smith's activities. (Ct. Rec. 15
24 at 14.)

25      In *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002) the
26 court noted that when the ALJ finds the claimant's testimony as to the
27 severity of pain and impairments is unreliable, the ALJ must make a

28
   ORDER GRANTING DEFENDANT'S MOTION
   FOR SUMMARY JUDGMENT

credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit claimant's testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc).  The ALJ may consider the following factors when weighing the claimant's credibility: "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [his/her] testimony and [his/her] conduct, [claimant's] daily activities, [his/her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  If the ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage in second-guessing. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). If there is no affirmative evidence that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony regarding the severity of symptoms. *Reddick*, 157 F.3d at 722.

   The ALJ found plaintiff less than completely credible in part because, as Dr. Butler noted, she attended a wedding in Florida in early 2001 and while there had little pain. (Tr. 27.) The ALJ relied on Dr. Butler's statement that plaintiff's pain "waxed and waned." (Id.) He relied on the statements of treating doctors that plaintiff's symptoms improved during the relevant time frame, and that stopping methotrexate did not significantly affect her functioning. (Id.) The ALJ also credits the medical opinions that plaintiff's obesity contributes to sleep problems and resulting fatigue, and contributes to her back pain. (Id.) The ALJ concludes: "These reports show the

1 claimant has severe impairments causing some vocational limitations,
2 but not to the point of disability." (Id.)

3    The ALJ also finds that plaintiff's range of activities does not
4 support the degree of impairment or severity of symptoms alleged. (Tr.
5 27.) He notes that as of January 25, 2000, plaintiff indicated that
6 she drove, attended church, did some household chores, shopped and
7 visited with friends. (Id., citing Tr. 100-01; 105; 108.) In February
8 of 2000 plaintiff said she spent a great deal of time home schooling
9 her son every morning. (Tr. 27.) She reported doing housework in
10 increments, with frequent breaks, cooking, doing laundry, as well as
11 reading, working puzzles and playing parlor games with her children.
12 (Id.) In May of 2000 plaintiff was taking college classes. (Id.)  The
13 ALJ correctly found that this level of activity suggests that
14 plaintiff has overstated her alleged limitations.

15    Plaintiff argues that the ALJ gave the vocational expert an
16 incomplete hypothetical. (Ct. Rec. 12 at 10-11.) However, plaintiff's
17 argument is that the ALJ failed to include limitations that she
18 described when she testified. The ALJ properly assessed plaintiff's
19 credibility. Accordingly, the ALJ was not required to include
20 limitations that he properly found were not supported by the evidence.

21    Plaintiff points out that the vocational expert opined that she
22 would be unable to perform her past relevant work as a call monitor
23 if she could not tolerate a high degree of stress. (Ct. Rec. 12 at
24 11.) Examining physician John Moulton, M.D., found in February of 2000
25 that plaintiff had no mental or emotional barriers to returning to
26 work. She showed only mild symptoms of depression and was
27 psychiatrically capable of working at any job for which she was

28

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
                    - 11 -

qualified. (Tr. 142; 145.) Additionally, the vocational expert opined in the alternative that there are sedentary jobs other than her past job as a call monitor that plaintiff could perform based on her RFC. (Tr. 475-76.) The ALJ gave the vocational expert a hypothetical that included all of plaintiff's impairments which were established by competent evidence.

<u>Conclusion</u>

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is supported by substantial evidence in the record and is free of legal error. Because plaintiff is capable of performing her past relevant work she is "not disabled" within the meaning of the Social Security Act.

Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Ct. Rec. 11) is **DENIED.**

2. Defendant's Motion for Summary Judgment (Ct. Rec. 14) is **GRANTED.**

3. Any application for attorney fees may be filed by separate Motion.

4. The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file **CLOSED.**

**DATED** this 29th day of April, 2005.

s/ Michael W. Leavitt

MICHAEL W. LEAVITT
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT